JULIA O'BRIEN, Respondent, v. HENRY LOOMIS, Appellant.

### St. Louis Court of Appeals, December 23, 1890.

1. **Pleading:** SUING FOR NEGLIGENCE AND RECOVERING FOR INTENTIONAL INJURY. When a plaintiff pleads that an injury was caused by the negligence of the defendant, he cannot recover for an intentional injury. Accordingly, in the case at bar, wherein a recovery was sought for the shooting of the plaintiff by the defendant, a child of the age of ten years, and wherein the petition alleged that the defendant was reckless, and had little or no discretion in the use of a gun, and that the shooting occurred "through his said reckless habit and want of discretion in the use of said gun," it was *held* to be error to direct the jury to find for the plaintiff on the hypothesis that the shooting was intentional.

2. **Negligence:** EXEMPLARY DAMAGES. When the action is one against a child ten years of age, and is for injury caused by such child, and the petition does not charge wantonness, malice or wicked intent on the part of the defendant, or any of the usual elements of exemplary damages, but alleges that the injuries were due to the recklessness and want of discretion of the defendant in the use of a firearm, exemplary damages are not recoverable.

3. **Instructions:** NOT PREDICATED ON EVIDENCE. It is error by an instruction to authorize a jury to include in the assessment of the plaintiff's damages his loss of earnings, when there is no evidence what his earning capacity was, or how much time he lost in consequence of the injury complained of.

O'Brien v. Loomis.

*Appeal from the St. Louis City Circuit Court.*—Hon. Jacob Klein, Judge.

REVERSED AND REMANDED.

*Dickson & Smith,* for appellant.

*A. R. Taylor,* for respondent.

Thompson, J.—This was a joint action against father and son, the latter an infant of about the age of ten years, to recover damages, caused by reason of an injury to plaintiff, arising from a gunshot wound, inflicted by the son. The petition was as follows:

"The plaintiff states that defendant Luther Loomis is the father of Henry Loomis, who is a minor of the age of about ten years, and resides with, and was at times herein stated in custody of, said Luther.

"That the plaintiff, prior to, and on, the tenth day of June, 1889, was in the employment of the defendant as a servant; that, prior to, and on, the tenth day of June, 1889, the defendant Luther Loomis had given to his said minor son a certain firearm, known as a 'cat rifle,' which was dangerous to the life and limb of any person who should be wounded therewith; that said Henry, or Harry, Loomis was a *reckless* child, and *had little or no discretion* in the use of said firearm; that said *reckless character* of said child and his *want of discretion* in the use of said firearm would lead him to fire said loaded rifle at persons, and thereby greatly endanger their lives and persons, and, especially, the lives and persons of the servants of said Luther, and, especially, of this plaintiff; of all such *reckless habit* of his said child, and of his *want of discretion* in the use of said rifle, and of the danger to the servants of said Luther, and to this plaintiff therefrom, said Luther well knew at the time of giving said rifle to his

said son, and up to the time of plaintiff's injury, here-after mentioned, yet *he negligently and carelessly* furnished his said son with said rifle, and ammunition to shoot, and so *negligently* and *carelessly* permitted said child to have and control said rifle and ammunition to shoot with, well knowing the danger to his servants and to plaintiff thereby caused.

"That, on the tenth day of June, 1889, said Henry Loomis, having charge and control of said rifle, and ammunition therefor, so furnished by defendant Luther, and by him allowed the control and use of said gun, and ammunition therefor, *did, through his said reckless habit and want of discretion* in the use of said gun, fire said gun at the plaintiff, the bullet from said gun so fired striking plaintiff in the breast, causing a painful and dangerous wound.

"That by said injury plaintiff was made sick and sore, and she has thereby suffered great pain of body and mind; has been disabled from labor, is permanently injured in her health and strength, and has incurred, and will hereafter incur, large expenses for medical attention, medicines and nursing, and was, and is, damaged in the sum of $10,000, for which she prays judgment."

A demurrer by the father having been sustained by the court, final judgment was rendered upon it in his favor, and the case proceeded against the son, alone.

The answer filed in behalf of the son was a general denial and a plea of contributory negligence. There was a verdict, and judgment was for $2,500, from which the defendant prosecutes this appeal.

The testimony tended to show that the plaintiff was employed in the house of the defendant's father as a domestic servant; that the defendant Henry Loomis was, at the time of the injury, about ten years of age; that he had a "cat rifle," which had been given him by his father as a Christmas present, and used the same with what is known as "B. B." cartridges, or more

commonly "bulleted breach caps;" that, about the tenth of June, 1889, the defendant, being in the kitchen of his father's home with plaintiff and two other servant girls of the neighborhood, who were visiting plaintiff, took the gun, which he generally kept in the kitchen, and pointed it at one of the visiting girls; that the latter ordered him to turn it away, which (according to her testimony) he did; and that, upon plaintiff assuring her that it would not hurt, defendant remarked that he "would show her," and, taking a cartridge from his pocket, inserted it in the gun and pointed the same at her, and, the gun going off, plaintiff was struck by the bullet in the breast and wounded. The uniform testimony is to the effect that plaintiff and defendant had always been the best of friends; that, upon the particular occasion, just before the shooting, defendant had been engaged with plaintiff in romping and frolicking; and that no exciting cause existed by reason of which the shooting can be considered intentional in the sense of a purpose to injure. The evidence left it fairly in doubt whether the accident did not spring from the going off of the gun at half-cock, contrary to the defendant's expectations.

Error is assigned of the rulings of the court in respect of the instructions:

*First.* In refusing an instruction in the nature of a demurrer to the evidence. We do not think it necessary to do any more than to say that this assignment of error is untenable.

*Second.* That the court erred in giving for plaintiff, and against defendant's objection, the following instruction: "If the jury find from the evidence in this case that the act of the boy in shooting plaintiff was either intentional or was done without the exercise of ordinary care on the part of defendant, and was a negligent act, considering his age and discretion, then plaintiff is entitled to recover."

*Third.* That the court erred in giving at plaintiff's request, and against defendant's objection, the following instruction: " If the jury find from the evidence that the defendant Henry Loomis shot plaintiff with a bullet fired from the gun mentioned in the evidence ; and if the jury further find from the evidence that the said Henry Loomis intentionally fired said gun at the plaintiff, intending to wound or injure the plaintiff, then plaintiff is entitled to recover such damages as the jury may believe from the evidence will be a fair compensation to her for the injury received. And if the jury find for the plaintiff hereunder, they may also award further damages against the said defendant in such sum as the jury believe would be a suitable punishment to said defendant for said wrongful act, but the verdict cannot exceed $10,000."

*Fourth.* That the court erred in giving at plaintiff's request, and against defendant's objection, the following instruction: " If the jury under the evidence and instructions find a verdict in favor of the plaintiff, they should assess her damages at such a sum as they may believe from the evidence will be a fair compensation to her: (1) For any pain of body or mind. (2) For any loss of earnings. (3) For any physical disability and impairment of health, which the jury believe from the evidence the plaintiff has sustained, or will hereafter sustain, by reason of said injury, and directly caused thereby. And if the jury further find from the evidence that the defendant, Henry Loomis, had, at the time of the injury, sufficient intelligence and discretion to understand and appreciate the danger to the plaintiff from his act in pointing the loaded gun at plaintiff and pulling the trigger ; and if the jury further find from the evidence, considering the age and discretion of said defendant at the time of the injury, that his said act was reckless and wanton, and without consideration for plaintiff's rights or safety, then, in

O'Brien v. Loomis.

addition to the damages actually inflicted upon plaintiff, the jury may award a further sum by way of punishment to defendant, such as the jury may deem a fit punishment to defendant for said wrongful act; but the verdict cannot exceed $10,000."

*Fifth.* That the court erred in refusing to give the following instruction asked by the defendant: "If the jury believe from the evidence that the plaintiff by her own negligence directly contributed in any degree to the injury sued for, they will find for defendant;" and erred in giving the same with the following modification: "If the jury believe from the evidence that plaintiff by her own negligence directly contributed in any degree to the injury sued for, they will find for defendant, unless the jury find from the evidence that the act of defendant causing the injury was wilfully and intentionally done by him."

I.   We are of opinion that there is a fundamental error running through these instructions, in that they authorize a recovery on the hypothesis of the injury having been "intentional," or that the gun was fired "intentionally" at the plaintiff, the defendant "intending to wound and injure her;" whereas the petition does not allege that the injury was *wilful* or *intentional*, but alleges that it was *negligent*. Recurring to the petition, it will be seen that it is unfortunate in having been drawn to charge both the father and the son, and in being the petition on which the case proceeded after final judgment had been rendered for the father on demurrer. It charges that the defendant, Harry, was "reckless," and that he "had little or no discretion," and it also charges that the injury happened "through his said reckless habit and want of discretion;" and it does not charge that it happened in any other manner. Webster defines the word "reckless," as "rashly or indifferently negligent; careless; heedless; mindless." The petition, therefore, claims damages for an injury the result of *negligence*, and the instruction authorizes

the jury to give damages on the hypothesis of. *wilful-ness*, and an intent to injure. We are of opinion that this case falls within the well-settled rule that the issues made by the pleadings cannot be broadened by the instructions.

It is true that, under our system, as at common law, the plaintiff may bring an action for a *direct injury*, such as shooting and wounding, by a petition in the form of a declaration in the common-law action of *trespass*, charging in the barest terms that the defendant *unlawfully and wrongfully* inflicted the injury upon the plaintiff, and that he can then recover on proof that the injury—provided it . be the direct injury alleged—was the result of *negligence merely*. . *Conway v. Reed*, 66 Mo. 346. The reason was that in the case of a direct injury proceeding from the plaintiff to the defendant, nothing excused it short of proof that the injury was unavoidable. *Weaver v. Ward*, Hobart, 134. That a plaintiff could sue in trespass and recover for a direct injury, either on proof that the injury was *intentional or negligent* has been familiar learning to the profession ever since the celebrated "*Squib Case*," *Scott v. Sheppard*, 2 W. Black. 892. See *Morgan v. Cox*, 22 Mo. 373; *Castle v. Duryee*, 2 Keyes (N. Y.) 169.

But the policy of our code of procedure is to require the party to state in his pleadings his real ground of action or defense; and, if he chooses one ground, he can not so enlarge it as to recover on another. This is in accordance with what is said on one of the opening pages of a standard work in respect of actions for damages for negligence:

"It is clear that a plaintiff may elect between suing upon a charge of wilful injury, or a mere charge of negligence, wherever the facts are susceptible of a double construction. It does not lie with the defendant to insist that he has been criminal instead of merely careless. In making his election, however, the plaintiff

must remember that he will be bound by it. If the complaint sets up a case of wilful injury, it cannot be sustained by evidence of mere negligence, however gross; while, on the other hand, if it charges negligence only, the plaintiff cannot put in evidence, the only relevancy of which consists in proving *intentional* injury, such as would sustain an entirely different action." Shearman and Redfield on Negligence [4 Ed.] sec. 7.

We have been able to find no case, decided in this state, in which a party sued on the theory of negligence and recovered on the theory of wilfulness or malice, nor indeed any case where such a thing was attempted. But this is probably evidence of an understanding on the part of the profession that such a thing cannot be done. We have, however, been referred to several decisions of the supreme court of Indiana, which proceed on the distinction between actions grounded on negligence and actions grounded on wilfulness, which is stated by the above-named authors. *Pennsylvania Co. v. Sinclair*, 62 Ind. 301; *Pennsylvania Co. v. Smith*, 98 Ind. 42; *Cincinnati, etc., Ry. Co. v. Eaton*, 53 Ind. 307; *Terre Haute, etc., Ry. Co. v. Graham*, 95 Ind. 286. In *Pennsylvania Co. v. Smith, supra*, it is held that, under an averment of negligence, there can be no recovery for a wilful injury.

The decisions in this state present many analogous rulings, which go to show that such a recovery cannot be had. Thus *Hubbard v. Railroad*, 63 Mo. 68, is to the effect that a plaintiff cannot sue in *trespass* for a wrongful entering and recover on proof that possession was obtained by fraud. In *Martin v. Miller*, 20 Mo. 391 (which was an action commenced before the code), it was held that the plaintiff could not set out in his declaration that, on a certain *day of the month*, in a certain year, the defendant, "wrongfully, negligently and unjustly," set out a certain fire which did damage to the plaintiff, and then recover by merely proving that that day was Sunday, and that the defendant, in setting

the fire, was at work on Sunday in violation of the statute. And cases in this state are numerous, where it has been held that a plaintiff cannot sue for damages for negligence consisting of a particular thing, and then recover for negligence consisting in something else. That the action for negligence is essentially different from the action for a wilful and intentional injury, is suggested by the last of the above instructions, where the learned judge correctly told the jury that contributory negligence was a defense in the former case, but not in the latter.

If, then, the issues made by the pleadings were not large enough to embrace the hypothesis of a wilful or intentional injury, it was error for the court to instruct the jury on such a theory, although the evidence, in a proper state of the pleadings, might have warranted such an instruction ; for our procedure is very strict to the effect that it is error to submit to the jury an issue of fact not made by the pleadings. *Melvin v. Railroad,* 89 Mo. 106 ; *Kenney v. Railroad,* 70 Mo. 252 ; *Benson v. Railroad,* 78 Mo. 504, 513 ; *Fulkerson v. Thornton,* 68 Mo. 468.

II. The court, as already seen, instructed the jury that they might give *exemplary damages,* in an instruction which seems to have been in itself correctly drawn. Upon this point we are of opinion no case is stated in the petition for exemplary damages, and that this part of the instruction was, therefore, erroneous. *Welsh v. Stewart,* 31 Mo. App. 376. The petition, as already stated, charges that the injury was done by the defendant, "through his reckless habit and want of discretion;" but it does not charge wantonness, malice, wicked intent, or any of the usual elements of exemplary damages. Mere negligence, unless it be so reckless as to amount to a wanton disregard of social duty, will not afford ground for exemplary damages. As was said by Judge Richardson, in a case where the action was against an infant for damages for assault and battery :

"If the injury is not intentional, but results simply from a want of proper care, nothing more should be recovered than will compensate for the actual damage; but, if the act is wilful or intentional, then 'the idea of compensation is abandoned, and that of punishment is introduced.' It is said, generally, that malice must exist to entitle the plaintiff to anything more than reparation for the injury; but it will be found that the word malice is always used, in such connections, not in its common acceptation of ill-will against the person, but in its legal sense, 'wilfulness—a wrongful act done intentionally, without just cause.' *United States v. Taylor*, 2 Sumn. ( U. S.) 586. The term malice imports, according to its legal signification, nothing more than that the act is wilful or intentional; and, when used to qualify the character of a trespass, it is only employed to distinguish it from that class of injuries which one person may inflict upon another without the intention to do harm, but for which he is responsible, because the act is not unavoidable." *Goetz v. Ambs*, 27 Mo. 33.

In *Welsh v. Stewart*, 31 Mo. App. 376, the decisions of the supreme court of this state on the subject of exemplary damages were reviewed. It was there shown that the general trend of those decisions was in line with the views above quoted from *Goetz v. Ambs*, and was to the general effect that exemplary damages can only be given where there is some element of wantonness or malice in the injury done to the plaintiff. It was also pointed out that the supreme court had, in one definition of the circumstances under which exemplary damages can be given, included the case of "gross negligence ( *Franz v. Hilterbrand*, 45 Mo. 121); but that, in the later case of *Brown v. Road Co.*, 89 Mo. 152, that court had denied this extension of the rule by holding that an instruction authorizing such damages was erroneous, where there was "nothing in the evidence to show that the failure of defendant * * * was either wanton or malicious, one or the other of which elements

must appear to justify the awarding of punitive damages." We, therefore, held that such damages cannot be given under a petition, which is framed strictly on the theory of compensation, and which does not charge malice or wantonness, or otherwise state facts showing that the injury complained of took place under circumstances in which the law allows such damages. We reaffirmed the principles of this decision in *Pruitt v. Cheltenham Quarry Co.*, 33 Mo. App. 18, and the Kansas City Court of Appeals reaffirmed and applied it in *Trauerman v. Lippincott*, 39 Mo. App. 478, 487.

If the action were against a person of more mature years, and if the petition charged that the injury was the result of recklessness alone, it could be argued with more plausibility that exemplary damages could be brought within it. But where, as here, the petition describes the defendant as a "child," and ascribes the injury, not only to his "reckless habit," but also to his "want of discretion," it states a case which negatives the conception that exemplary damages can be given. Such damages are given as *punishment*. Any hypothesis which warrants the giving of them necessarily assumes that there is discretion, and so the court instructed the jury in this case. But it is going beyond any known legal conception to give such damages for an injury happening through an indiscretion of a child.

We know of no case where such damages have been allowed in the case of an injury by a child only ten years of age. That such a child might, under some circumstances, be criminally responsible, may be conceded, though such cases are rare. But the doctrine of exemplary damages has been imported from the criminal into the civil law on grounds which were illogical, and which were at first the subject of much controversy. Although the doctrine that such damages may be given is now well settled, the principle of giving them ought not to be loosely extended. They should only be given in the case of aggravated injuries, and to subserve a

wholesome public example. But what wholesome public example would be made by requiring this child to enter into adult life with a heavy judgment hanging over him, threatening to absorb his earnings, and thereby his energies, for an act of childish recklessness, committed when only ten years old? How many other children of the same age would be deterred by such an example from doing a similar act? If the father, who puts such a dangerous toy in the hands of a young child, could be reached and punished, the example would be wholesome; but not so as to his child. We hold, as a matter of law, that exemplary damages cannot be given against a boy ten years of age for an injury inflicted through mere recklessness and childish indiscretion.

III. The element of damage included in one of the above instructions was "any loss of earnings." It is conceded that there was no evidence tending to show what the plaintiff's earning capacity was, or how much time she lost in consequence of the injury. The giving of this instruction was, therefore, error. *Dunn v. Railroad*, 21 Mo. App. 188; *Morrison v. Yancey*, 23 Mo. App. 670; *Shenuit v. Breuggestradt*, 8 Mo. App. 46.

The judgment will be reversed and the cause remanded. All the judges concur.